**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:07CV376-C**

| | |
|---|---|
| LARKEY-WRIGLEY, LLC, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) **MEMORANDUM AND ORDER** |
| COMMERCIAL DEFEASANCE, LLC, and DEFEASANCE HOLDING COMPANY, LLC, | ) ) ) ) |
| Defendants. | ) ) ) |

**THIS MATTER** is before the Court on the "Plaintiff's Motion for Leave to Take Jurisdictional Discovery" (document #31) and ". . . Memorandum of Law in Support . . ." (document #32), both filed December 18, 2007. The Defendants filed their "Memorandum in Opposition . . ." (document #41) January 18, 2008. On February 5, 2008, the Plaintiff filed its ". . . Reply . . ." (document #44). In addition, on February 12, 2008, the Defendants filed their ". . . Surreply . . ." (document #47).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the subject Motion is now ripe for determination.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will grant the "Plaintiff's Motion for Leave to Take Jurisdictional Discovery," as discussed below.

# I. FACTUAL AND PROCEDURAL HISTORY

This is a proposed class action alleging breach of contract, breach of fiduciary duty, constructive fraud, unfair and deceptive trade practices, common law fraud, and seeking the imposition of a constructive trust. The Plaintiff is a real estate development company that initiated a defeasance of a commercial loan in 2005 to release a mortgage lien on certain office buildings in order to sell the buildings unencumbered on the open market. Defendant Commercial Defeasance, LLC is a defeasance facilitator primarily serving borrowers who form corporate entities to own and manage high value commercial real estate. Defendant Defeasance Holding Company, LLC serves as the administrative agent to the "Successor Borrower" established during the defeasance process.

A defeasance is a real estate transaction which allows a borrower to substitute a portfolio of income producing collateral for the collateral which initially secured the loan, generally the borrower's commercial real estate. This process is a necessity when the terms of the original mortgage do not allow for prepayment and the borrower thereafter seeks to sell the real estate securing the loan. In every defeasance transaction, a Successor Borrower takes the place of the original borrower and uses the income from the substituted collateral (here United States securities) to make the monthly payments on the loan.

In the subject transaction, the Plaintiff retained and paid a specified amount to Defendant Commercial Defeasance to facilitate the defeasance. Although the Plaintiff does not complain of Commercial Defeasance's facilitation of the process, it does allege that "despite various affirmative duties of disclosure, [Commercial Defeasance] did not explain or disclose that the transaction was structured intentionally and purposefully to generate windfall compensation for defendants and/or their affiliates." This alleged undisclosed compensation is comprised of what the parties refer to as

"float" and "residual."

"Float" occurs when the income from the government securities is received by the Successor Borrower prior to the time it must make the next cash payment on the loan. Between the date when the substituted collateral generates cash proceeds and the date that the proceeds must be used to make a monthly loan payment, the proceeds are reinvested in an eligible permitted investment, such as an interest-paying money market account. This reinvestment interest is referred to as "float."

"Residual" income results when the terms of the loan allow prepayment as of a certain date – as here where the terms allowed prepayment three months prior to the loan's maturity date (February 11, 2012). If the Successor Borrower exercises the right to prepay the loan it must do so with its own funds because the substituted collateral is pledged to the lender and held by a securities intermediary. However, the remaining income from the government securities will often exceed the amount the Successor Borrower expended to pay off the loan. This excess amount is referred to as "residual" and is ultimately returned to the Successor Borrower.

The Defendants' alleged failure to disclose the "float" and "residual" is the essential basis of this lawsuit.

On November 15, 2007, the Defendants filed a Motion to Dismiss asserting lack of subject matter jurisdiction based on standing and ripeness pursuant to Fed. R. Civ. P. 12(b)(1), and various bases for dismissal pursuant to Rule 12(b)(6). Relevant to the subject Motion, the Plaintiff seeks jurisdictional discovery to respond to the Defendants' standing and ripeness arguments.

The Defendants argue that the Plaintiff lacks standing because it "assigned all right, title and interest in the Substituted Collateral" to the Successor Borrower. As to ripeness, the Defendants initially argued that the claims were not ripe because "[w]hether there will be any excess proceeds

from the Substituted Collateral, and whether such proceeds will be distributed to anyone, cannot be determined until 2012, the maturity date of the loan." However, in their Response to the subject Motion, the Defendants concede that is possible to estimate the amount of excess proceeds, refining their ripeness argument to assert that the Plaintiff's claims will not be ripe until the Defendants actually receive the alleged excess proceeds (in 2012).

The Plaintiff points to an Accountant's Report, attached to the Defendants' Motion to Dismiss, which analyzes whether the government securities are sufficient to make the required mortgage payments through the loan's maturity date. The Report estimates that $.04 will remain upon payment of the loan at its maturity date, but that a securities balloon payment will yield cash to the Escrow Account in an amount exceeding the principal amount due on the loan by almost $100,000.00. Thus, it would appear that there has already been a preliminary estimate of this element of the alleged damages.

In spite of this concession,[1] the Plaintiff continues to seek jurisdictional discovery arguing that the Defendants cannot make one argument in support of their motion to dismiss and then a contrary argument to avoid jurisdictional discovery. The Plaintiff also argues that the Defendants assertions prove that there are disputed areas of fact, requiring jurisdictional discovery.

## II. <u>DISCUSSION</u>

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides generally that:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and

---

[1] The Defendants argue that this is not a concession and that they never asserted that "float" and "residual" could not be estimated. However, this position does appear to be contrary to arguments in the Motion to Dismiss.

4

> location of persons who know of any discoverable matter. *For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).*

Fed. R. Civ. P. 26(b)(1) (emphasis in original). The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a litigant is not entitled to conduct discovery that is intended to annoy, embarrass, or oppress the opposing party. See Fed. R. Civ. P. 26(c).

The subject motion relates to a motion to dismiss pursuant to Rule 12(b)(1). Such a challenge to subject matter jurisdiction may be raised as either a facial or factual attack. See Cantley v. Simmons, 179 F. Supp. 2d 654, 655 (S.D. W. Va. 2002). A facial attack questions whether, accepting all of the allegations in the complaint as true, the allegations are sufficient to sustain the court's jurisdiction. Id. In contrast, a factual attack "challenges the truthfulness of the factual allegations in the complaint upon which subject matter jurisdiction is based." Id. With a factual attack, the court may consider evidence outside the pleadings without converting a motion to dismiss into a motion for summary judgment. Id.

Both parties agree that the Defendants are making a factual attack on subject matter jurisdiction. Generally where a factual attack occurs, "a trial court should allow plaintiffs the opportunity to discover facts to support jurisdictional allegations." Thigpen v. United States, 800 F.2d 393, 396-97 (4th Cir. 1986), rejected on other grounds, Sheridan v. United States, 487 U.S. 392 (1988).

While the Defendants have effectively conceded that "float" and "residual" can be estimated, their ripeness argument in the motion to dismiss makes assertions to the contrary, that is, that these

5

amounts are sufficiently uncertain that the Plaintiff's claims cannot proceed until the loan's maturity date when these exact sums are known for certain. The Plaintiff seeks to engage in factual discovery on this point. The Plaintiff also seeks discovery on the Defendants' assertion that they do not "possess and/or control the pledged collateral," – specifically to discover whether the Defendants are arguing that the collateral is pledged against the loan or that the Successor Borrower is a separate legal entity with sole rights in regard to the pledged collateral and, of course, to discover evidence of Defendants' position.

Regarding standing, the Defendants argue that the Plaintiff assigned its rights to the substitute collateral to the Successor Borrower and therefore cannot bring a claim for excess proceeds. The Plaintiff does not dispute the assignment, but argues that its claims are based on the Defendants' failure to disclose, <u>at the time of the defeasance transaction</u>, that additional payments would be received. The Plaintiff argues that because of their corporate relationship the Defendants are benefitting from the excess payments to the same extent as the Successor Borrower, and that this fact should have been disclosed at the time of the defeasance. Accordingly, the Plaintiff argues, and the Court agrees, that the corporate structures and relatedness of the Defendants and the Successor Borrower are relevant to the issue of standing, and thus jurisdictional discovery is warranted on this point as well.

Accordingly, the Plaintiff's Motion for Leave to Take Jurisdictional Discovery will be <u>granted</u>.

### III.  ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.  The "Plaintiff's Motion for Leave to Take Jurisdictional Discovery" (document #31) is **GRANTED**.

2.  The parties shall have up to and including **May 27, 2008** in which to complete jurisdictional discovery.  Thereafter, the Plaintiff is directed to respond to the Defendants' Motion to Dismiss on or before **June 13, 2008**.

3.  The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED.**

Signed: February 25, 2008

_Carl Horn, III_
Carl Horn, III
United States Magistrate Judge