# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:07CV376-C

| | |
|---|---|
| LARKEY-WRIGLEY, LLC, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      vs.<br><br>COMMERCIAL DEFEASANCE, LLC, and DEFEASANCE HOLDING COMPANY, LLC,<br><br>      Defendants. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the "Plaintiff's Motion to Compel Jurisdictional Discovery Responses" (document #50) and ". . . Memorandum of Law in Support . . ." (document #51), both filed May 16, 2008. The Defendants filed their "Memorandum in Opposition . . ." (document #60) June 17, 2008. On July 11, 2008, the Plaintiff filed its ". . . Reply . . ." (document #62). In addition, on July 17, 2008, the Defendants filed their ". . . Surreply . . ." (document #64).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the subject Motion is now ripe for determination.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will **grant in part** and **deny in part** the "Plaintiff's Motion to Compel Jurisdictional Discovery Responses," as discussed below.

# I. **FACTUAL AND PROCEDURAL HISTORY**

This is a proposed class action alleging breach of contract, breach of fiduciary duty, constructive fraud, unfair and deceptive trade practices, common law fraud, and seeking the imposition of a constructive trust. The Plaintiff is a real estate development company that initiated a defeasance of a commercial loan in 2005 to release a mortgage lien on certain office buildings in order to sell the buildings unencumbered on the open market. Defendant Commercial Defeasance, LLC is a defeasance facilitator primarily serving borrowers who form corporate entities to own and manage high value commercial real estate. Defendant Defeasance Holding Company, LLC serves as the administrative agent to the "Successor Borrower" established during the defeasance process.

A defeasance is a real estate transaction which allows a borrower to substitute a portfolio of income producing collateral for the property which initially secured the loan, generally the borrower's commercial real estate. This process is a necessity when the terms of the original mortgage do not allow for prepayment and the borrower thereafter seeks to sell the real estate securing the loan. In every defeasance transaction, a Successor Borrower takes the place of the original borrower and uses the income from the substituted collateral (here United States securities) to make the monthly payments on the loan.

In the subject transaction, the Plaintiff retained and paid a specified amount to Defendant Commercial Defeasance to facilitate the defeasance. Although the Plaintiff does not complain of Commercial Defeasance's facilitation of the process, it does allege that "despite various affirmative duties of disclosure, [Commercial Defeasance] did not explain or disclose that the transaction was structured intentionally and purposefully to generate windfall compensation for defendants and/or their affiliates." This alleged undisclosed compensation is comprised of what the parties refer to as

"float" and "residual."

"Float" occurs when the income from the government securities is received by the Successor Borrower prior to the time it must make the next cash payment on the loan. Between the date when the substituted collateral generates cash proceeds and the date that the proceeds must be used to make a monthly loan payment, the proceeds are reinvested in an eligible permitted investment, such as an interest-paying money market account. This reinvestment interest is referred to as "float."

"Residual" income results when the terms of the loan allow prepayment as of a certain date – as here, where the terms allowed prepayment three months prior to the loan's maturity date (February 11, 2012). If the Successor Borrower exercises the right to prepay the loan it must do so with its own funds because the substituted collateral is pledged to the lender and held by a securities intermediary. However, the remaining income from the government securities will often exceed the amount the Successor Borrower expended to pay off the loan. This excess amount is referred to as "residual" and is ultimately returned to the Successor Borrower.

The Defendants' alleged failure to disclose the "float" and "residual" is the essential basis of this lawsuit.

On November 15, 2007, the Defendants filed a Motion to Dismiss asserting lack of subject matter jurisdiction based on standing and ripeness pursuant to Fed. R. Civ. P. 12(b)(1), and various bases for dismissal pursuant to Rule 12(b)(6). Relevant to the subject Motion, the Plaintiff seeks jurisdictional discovery to respond to the Defendants' standing and ripeness arguments.

The Defendants argue that the Plaintiff lacks standing because it "assigned all right, title and interest in the Substituted Collateral" to the Successor Borrower. As to ripeness, the Defendants argue that the Plaintiff's Complaint seeks damages based upon the actual receipt of float and

residual, something that will not happen, if at all, until the loan has been satisfied.

Relevant to the underlying Motion to Dismiss, on February 25, 2008, the Court allowed the Plaintiff to engage in limited jurisdictional discovery to respond to the Defendants' standing and ripeness arguments. Specifically, the Court allowed jurisdictional discovery in the following three areas:

(1) whether float and residual can be estimated with enough certainty to allow the Plaintiff's claims to proceed prior to the loan's maturity date (when these sums are known for certain);

(2) whether the Defendants possess and/or control the pledged collateral (to discover whether the Defendants' argument is that the collateral is pledged against the loan *or* that the Successor Borrower is a separate legal entity with sole rights in regard to the pledged collateral); and

(3) the corporate structures and relatedness of the Defendants and the Successor Borrower.

Through the subject Motion, the Plaintiff seeks to compel production of information related to float, residual, and the Defendants' relationship with the Successor Borrower. As discussed below, the undersigned will <u>grant in part</u> and <u>deny in part</u> these requests – limiting the required production to information and documents relevant to the jurisdictional issues raised in the Defendants' Motion to Dismiss.

In addition, the parties have raised concerns regarding a third party subpoena issued by the Plaintiff, without formally attempting to quash or enforce the subpoena. The subpoena was directed to Greg Stranger, a defendant in the Western District of North Carolina civil action <u>Commercial Defeasance, LLC v. Greg Stranger, The Boston Consulting Group, and Capital Defeasance Group, LLC</u>, 3:06cv422. According to the Plaintiff, it sought jurisdictionally-related documents from the sealed case which were in Mr. Stranger's possession. Mr. Stranger has not complied with the

4

subpoena because defense counsel (in the subject action) informed him that he would be in contempt of court if he provided the Plaintiff with the prior case's sealed documents. Bearing in mind that the Court will not take action on this subpoena until the parties formally seek to have it enforced or quashed, it does appear that the documents sought by the Plaintiff from this third party could all be obtained from the Defendants. See Nicholas v. Wyndham Int'l, Inc., 373 F.3d 537, 543 (4th Cir. 2004) (affirming district court's denial of motion to enforce non-party subpoena where the moving party had access to the requested information through discovery from an opposing party). Accordingly, for purposes of jurisdictional discovery, the Defendant will be expected to produce any documents from the prior lawsuit which fall into the categories compelled by the subject Order, and likewise, to do the same if and when general discovery begins.

## II. DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides generally that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. *For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).*

Fed. R. Civ. P. 26(b)(1) (emphasis in original). The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a litigant is not entitled to conduct discovery that is intended to annoy, embarrass, or oppress the opposing party. See Fed. R. Civ. P. 26(c).

The breadth of permissible discovery is well settled: the discovery sought need only be

5

nonprivileged and relevant to the subject matter. The Defendants are correct that the Court only allowed limited jurisdictional discovery to proceed in the following three categories: (1) the certainty with which float and residual can be estimated; (2) the Defendants' relationship to the pledged collateral; and (3) the corporate structures and relatedness of the Defendants and the Successor Borrower. The Defendants are <u>incorrect</u>, however, in their narrow reading of these three categories. While some of the Plaintiff's request are overly broad, many of the Defendants' objections raised in the subject Motion relate more to the merits of the underlying Motion to Dismiss.[1] Essentially, the Defendants are making conclusions based on their knowledge of the facts rather than simply passing the relevant information to the Plaintiff for it to make its own conclusions and arguments.[2] Accordingly, those discovery requests which are <u>relevant</u> to the three categories allowed by the Court in its February 25, 2008 Order (and not overly broad), will be allowed.

Keeping these general principles in mind, the Court will address the discovery disputes raised in the parties' memorandums in terms of the two disputed areas of discovery allowed by the February 25, 2008 Order.[3]

---

[1] Likewise, the Plaintiff bases much of its argument on alleged contradictions between the Defendants' assertions in the subject action and the documents it has already obtained from the <u>Stranger</u> action. Although interesting, these contradictions serve better as impeachments for the underlying Motion to Dismiss than as justifications for additional discovery.

[2] The allowance of discovery does not speak to the ultimate merits of arguments for or against the Motion to Dismiss. As stated in the February 25, 2008 Order, where a factual attack on subject matter jurisdiction occurs, "a trial court should allow plaintiffs the opportunity to discover facts to support jurisdictional allegations." <u>Thigpen v. United States</u>, 800 F.2d 393, 396-97 (4th Cir. 1986), <u>rejected on other grounds</u>, <u>Sheridan v. United States</u>, 487 U.S. 392 (1988). In allowing the jurisdictional discovery, and in granting parts of the subject Motion to Compel, the Court is mindful that the purpose of such discovery is to allow the Plaintiff, and ultimately the Court, to reach a full and informed decision as to whether subject matter jurisdiction exists.

[3] Discovery relevant to the Defendants' relationship to the pledged collateral was generally allowed so that the Plaintiff could seek discovery on whether the Defendant alleged not to possess and/or control the pledged collateral because it was pledged against the loan or because the Successor Borrower is a separate legal entity. The parties have not presented any arguments over discovery relating directly to this topic. There is much disagreement over discovery sought as to the corporate structures and relatedness of the Defendants and the Successor Borrower –

6

### (1) The certainty with which float and residual can be estimated.

In relation to this topic, the Plaintiff seeks any "factoring agreements" relating to the Defendants' defeasance business generally. The Defendants argue that the Plaintiff misconstrues these agreements, which are actually monetization agreements – described by the Defendants as "credit arrangements, i.e., loans." Even using the Defendants' definition, a monetization agreement is allowing some entity to receive a present day value based on future projections of the value of the float and residual. The Court finds that these agreements, if they exist as to the <u>subject defeasance</u>, are relevant to the issue of the certainty of float and residual estimations – but will not require production of all such agreements relating to any of the Defendants' clients' defeasance transactions. Accordingly, assuming the Defendants are able to gain access to these documents,[4] they are ordered to produce any such agreements which relate to the <u>Plaintiff's</u> defeasance and/or substitute collateral through the Successor Borrower.

The Plaintiff also alleges that the Defendants possess, but have refused to produce, documents which demonstrate "how the 'excess payments' are generated, how defendants and their related affiliates capture and control those payments, and the present value of the excess payments." To the extent the Defendants (or their affiliates) possess such documents, these are clearly relevant to the certainty with which float and residual can be estimated and should be produced. The Defendants have objected to producing this information because, as worded, the Plaintiff's request

---

which encompasses the question of whether the Successor Borrower is a separate legal entity. Accordingly, any disputes over the issue of the Successor Borrower's legal status will be discussed in that section.

[4]It is clear from the organizational chart produced by the Defendants that at the very least the Successor Borrower is one of their affiliates – something the Defendants do not dispute. The legal impact of this relationship has not yet been determined by the Court, but at this point the Defendants will be required to produce documents within their affiliate's possession or control.

assumes that the residual and float have been or will be directly or indirectly received by the Defendants. As the corporate structure is a subject of much debate between the parties, the Defendants' objection is understandable. However, the underlying information is relevant and should be produced, subject to the Defendants' objection to the terms directly or indirectly. This request will be, however, limited to the subject defeasance (much of which has already been produced by the Defendants).

The Plaintiff also seeks all "sharing agreements" in which the Defendants have agreed to share float and residual with other clients. While the fact that the Defendants have entered into sharing agreements with other clients does tend to show that float and residual can be estimated with some certainty (a fact which does not appear to be in dispute), the Plaintiff has not shown a need for the particular details of these agreements, which do not relate directly to the defeasance at issue. Accordingly, this request will be denied.

The Plaintiff also seeks the "successor borrower database" which it learned of through the Stranger litigation, asserting that the database will provide the residual values of all of the successor borrowers used by the Defendants in other defeasance transactions. This request shall be denied because the Plaintiff has not shown any need, at this time, for information regarding other defeasance transactions. The Defendants have provided the information from the database regarding the Plaintiff's defeasance. In addition, there is no dispute that the Defendants have estimated float and residual for other defeasance transactions, as well as estimates of the present value of those amounts. This fact is sufficient for the Plaintiff's jurisdictional arguments and it has articulated no reason for its alleged need of the specific numbers for these other transactions.

Finally, the Plaintiff seeks the Accountant's Report on the subject defeasance as well as the

supporting documents for the Report. Although it is not clear from the parties' briefs, it appears as though the actual Accountant's Report has been produced, but not the "writings and recordings that support, refer or relate to the Accountant's Report." The Plaintiff asserts that these underlying documents will show the inflow of bond payments creating the residual. The Defendants' do not dispute this, but conclude that this is not relevant to the jurisdictional issue. The Court disagrees and finds that this data is relevant to the certainty of an estimate on residual, and will allow this request.

**(2) The corporate structures and relatedness of the Defendants and the Successor Borrower.**

First, the Plaintiff complains that the Defendants created an organizational chart for purposes of jurisdictional discovery. The Defendants do not dispute this fact, and the Court agrees that it is entirely reasonable to create the chart to respond the discovery requests. Accordingly, the Defendants will not be required to produce additional organizational charts.

However, stemming from the organizational chart produced, the Plaintiff seeks to learn "the manner and method by which the related entities and persons on the Chart control and benefit from the flow of 'excess payments' to their corporate 'family members.'" The chart shows that all of the affiliated entities, including the Defendants and the Successor Borrower, are ultimately under the control of Karin and Rob Finlay. Accordingly, it is reasonable for the Plaintiff to assume that the excess payments, i.e. the float and residual, will benefit other entities under the Finlay's control. The Defendants shall provide a response which assumes, for purposes of the response, that float and residual will occur and explains where this profit will ultimately come to rest.

There is also much disagreement between the parties as to the relevance of state and federal tax returns (and supporting materials) of the Successor Borrower, and its related entities. The

Plaintiff argues that this "information would reflect the finances of the Successor Borrower, including its income, its costs and expenses, and its relationship to the other entities shown on the Organizational Chart." While the Court agrees that the tax documents of the Successor Borrower would potentially contain relevant information to its relationship to the other entities on the organizational chart, the Plaintiff has not provided a sufficient basis for why it is entitled to the tax documents of the other entities. Accordingly, this request is granted to the extent it seeks the tax documents of the Successor Borrower for the years 2005-07.

Along these same lines, the Plaintiff seeks a wide range of financial documents from several of the entities on the organizational chart, but has provided no insight as to why this broad and burdensome request is necessary for the underlying Motion to Dismiss. While these documents may ultimately be relevant to the lawsuit, it is not clear at this time why they should be produced in the jurisdictional discovery phase. This request is therefore denied without prejudice to renew it should the Motion to Dismiss be denied.

### III. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. The "Plaintiff's Motion to Compel Jurisdictional Discovery Responses" (document #50) is **GRANTED IN PART** and **DENIED IN PART**, as discussed above.

2. The Defendants shall have up to and including **September 15, 2008** to provide the responses and documents compelled by the subject Order, and the parties shall have up to and including **October 16, 2008** in which to complete jurisdictional discovery. Thereafter, the Plaintiff is directed to respond to the Defendants' Motion to Dismiss on or before **October 31, 2008**.

3. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED.**

Signed: August 14, 2008

Carl Horn, III
United States Magistrate Judge